[No. F042059. Fifth Dist. Apr. 14, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DOMINIC JOSEPH DAGOSTINO, Defendant and Appellant.

976

## COUNSEL

Bradford D. Pappalardo, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Marc Nolan, Lloyd G. Carter and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HARRIS, J.—**

### INTRODUCTION

Appellant Dominic Joseph Dagostino pleaded no contest to possession of methamphetamine and was placed on probation pursuant to Proposition 36 (Pen. Code, § 1210.1).[1] Appellant subsequently violated probation and the trial court found his violation—failing to report to the mental health "gatekeeper" for an initial evaluation—was not a drug-related condition of probation, and excluded him from further treatment under Proposition 36. On appeal, appellant contends his failure to report to the "gatekeeper" was a drug-related condition of probation, pursuant to the provisions of the statute, and he should not have been excluded from Proposition 36. We will reverse and remand for further appropriate proceedings.

### FACTUAL AND PROCEDURAL HISTORY

At approximately 10:20 p.m. on June 2, 2001, Bakersfield Police Officers Menendez and Waynewright were on patrol on South Union Avenue when they pulled into the parking lot of the Desert Star Motel, an area known for prostitution and narcotics activities. They observed appellant standing in front of the motel with a man and a woman. The officers approached and asked what they were doing. Appellant was nervous and uncomfortable but his

---

[1] All statutory citations are to the Penal Code unless otherwise indicated.

companions seemed at ease. The officers conducted consensual searches of appellant and the other two people and found no contraband. The officers also determined there were no outstanding warrants for them. The other two people left but appellant remained in the parking lot and said he was staying at the motel. Appellant still seemed uncomfortable.

The officers asked appellant if they could search his room. Appellant said he did not care and motioned toward his room. Officer Menendez asked if there was anything in the room he needed to know about. Appellant replied there might be a pipe in the room because other people had been there. When Menendez entered the room, he immediately saw a package on the dresser which appeared to contain methamphetamine. Appellant said it was "speed," and added "there was some weed underneath the towel" on the floor next to the dresser. Officer Waynewright asked appellant about the packaged substance, and appellant again said it was "speed." A subsequent laboratory analysis determined the packaged substance was 25 milligrams of methamphetamine.

*The Plea and Disposition Hearing*

On or about June 19, 2001, an information was filed in the Superior Court of Kern County charging appellant with count I, felony possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and count II, misdemeanor possession of not more than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (b)). Appellant pleaded not guilty. On July 27, 2001, the court denied appellant's motion to suppress evidence.

On August 31, 2001, appellant pleaded no contest to felony possession of methamphetamine and the court dismissed the misdemeanor charge of possession of marijuana. The prosecutor noted appellant was eligible for probation pursuant to Proposition 36.

Appellant signed a waiver of rights and plea agreement. Appellant was also given a printed form which stated his eligibility and the requirements for the treatment and probation provisions of Proposition 36. The form stated appellant would be placed on probation, on condition of participating and completing an appropriate drug treatment program "as determined by the Kern County Probation and Mental Health Departments." Appellant could also be subject to other terms and conditions, such as participating in vocational training, family counseling, literacy training and/or community service, or any other appropriate condition. "If you are found eligible for the Drug Treatment Program, the Court will refer you for an evaluation by the Kern County Probation and Mental Health

Departments. Based on this evaluation, you will be placed in an appropriate licensed or certified community program, which may include one or more of the following: outpatient treatment, half-way house treatment, narcotic replacement therapy, drug education or prevention courses and/or limited inpatient or residential drug treatment as needed to address special detoxification or relapse situations or severe dependence." Appellant signed the document and certified he understood the requirements of Proposition 36.

The court suspended imposition of sentence and placed appellant on probation for three years pursuant to Proposition 36 on various terms and conditions. The court ordered appellant to report "forthwith" to the Probation Department Mental Health team, and report monthly thereafter to the probation department as to his current address and employment; refrain from the use or possession of narcotics; submit to drug tests; and complete "an appropriate drug treatment program, job training program, adult literacy classes, or any other appropriate Prop. 36 program which is approved by the Probation Department." Appellant was ordered to obey the rules and regulations, and continue in the programs, until successfully terminated by either the programs or the probation officer.

*The First Probation Violation*

On February 7, 2002, the probation officer filed a declaration letter which alleged appellant violated probation based on the following circumstances: In October 2001, appellant enrolled in the Desert Counseling Clinic, but only attended five of 19 scheduled counseling sessions and was discharged from the program for poor attendance; appellant had failed to report to the probation department by written form since October 2001; and appellant had repeatedly tested positive for marijuana up to November 2001, after which he failed to appear for his drug tests.

The probation officer further reported that on January 23, 2002, appellant failed to appear for an appointment at the probation department. On February 5, 2002, appellant called his probation officer and said he knew he missed the appointment but he had to take care of some things, and also said he had been in the hospital. Appellant was directed to report to the probation officer the next day and bring proof of his hospitalization. On February 6, 2002, appellant met with his probation officer and brought documents showing he had been hospitalized in Nevada. Appellant admitted he failed to advise the probation department he left the state, but stated he had been in a lot of pain and was transferred by ambulance to Nevada.

The probation officer noted appellant's performance in a Proposition 36 treatment program had not been satisfactory but he had made some efforts. Appellant should be given another opportunity in the program but "he is going to have to exhibit a high level of effort." The probation officer declared appellant's violation was "non-drug related" but he should be reinstated on probation pursuant to Proposition 36, and "a period of incarceration is in order."

On February 8, 2002, appellant appeared in court, admitted the probation violation, and stipulated to the declaration letter as the factual basis. Defense counsel did not have an explanation for appellant's failure to attend the counseling sessions, but asserted appellant's drug tests were positive because of his prescription medications. Defense counsel admitted appellant left the state, but his hospitalization was drug related and he was trying to rehabilitate himself. The probation officer interjected that appellant's drug tests were always positive for marijuana and he had not submitted to any tests since November 2001. Appellant also failed to report he was in Nevada.

The court believed the situation involved a question of getting appellant "jump-started," and "maybe by forcing him to abstain for some period of time, it might get him started in the right direction." The court found appellant violated probation, but reinstated appellant on probation pursuant to Proposition 36. The court ordered appellant to serve 60 days in jail as a condition of probation, and to report within one day of his release from county jail "to Probation Mental Health."[2] All other terms and conditions were to remain in effect.

*The Second Probation Violation*

On April 30, 2002, the probation officer filed another declaration letter, which provided a history of appellant's case and alleged appellant again violated probation. On August 31, 2001, appellant was initially placed on probation pursuant to Proposition 36. On September 4, 2001, he was instructed on the terms and conditions of probation and, on the same day, "met with the Mental Health Gatekeeper and was assessed at Level 4." Appellant was discharged from the treatment program, failed to report for drug tests, and admitted the probation violation. He was reinstated on probation and ordered to serve 60 days in jail.

The probation officer reported that appellant was released from jail on March 16, 2002, and he reported to the probation department on March 18.

---

[2] In part II, *post*, we will discuss the court's imposition of local time as a condition of probation for his first violation.

"He was re-instructed as to the terms and conditions of probation, and was scheduled to meet with the Mental Health Gatekeeper on March 27, 2002." Appellant failed to appear for the appointment with the gatekeeper. The probation officer sent appellant a letter which instructed him to report to the probation department for an office conference on April 3, 2002, but he failed to appear and there had been no further contact with appellant.

The probation officer declared appellant's prior record consisted of six misdemeanor drug convictions which were primarily Vehicle Code offenses, and the instant case was his first felony offense. He had been given two prior opportunities to participate in treatment pursuant to Proposition 36 but failed both chances. Appellant showed "minimal effort on the first opportunity and no effort on the second." The probation officer concluded appellant was "unamenable to treatment at this time," and recommended his exclusion from further treatment pursuant to section 1210.1 because the probation violation appeared "to be non-drug related."

Based on the allegations in the declaration letter, the court ordered the summary revocation of appellant's probation and issued a bench warrant for his arrest.

Appellant appeared at the probation department on July 11, 2002, and was arrested on the bench warrant. On August 23, 2002, the court suspended criminal proceedings pursuant to section 1368. On September 30, 2002, the court found appellant competent and reinstated proceedings.

*The Probation Violation Hearing*

On November 1 and 5, 2002, the court conducted the probation violation hearing. Lisa Young, a deputy probation officer, reviewed appellant's records and testified appellant appeared at the probation department on March 18, 2002. At that time, he met with Sharon Woolfolk, another deputy probation officer, who reinstructed him on the written statement of the terms and conditions of his probation. Appellant was instructed to report by written form on a monthly basis. Appellant was also instructed to return to the probation department on March 27, 2002, and report to the Kern County Mental Health Department "gatekeeper." Appellant did not appear for his appointment with the gatekeeper. On March 28, 2002, the probation department sent appellant a letter which instructed him to report on April 3, 2002. Appellant did not respond and failed to appear.

Ms. Young testified appellant called her in July 2002. She advised appellant there was an outstanding warrant for his arrest, and he could turn himself in or contact his attorney. Appellant said he would call his attorney. Appellant

also said he was looking into drug treatment programs and wanted her advice on what programs were available. A few days later, appellant appeared at the probation department and was arrested on the bench warrant.

Ms. Young testified appellant had been previously interviewed by the Kern mental health gatekeeper, who referred him to a drug treatment program. She was not aware whether appellant was identified as someone who needed mental health counseling.

Sharon Woolfolk, appellant's probation officer, testified appellant initially reported to the probation department in 2001, was referred to the Kern mental health gatekeeper, and reported to Linda Lasiter, who was one of the gatekeepers at that time. Ms. Woolfolk explained the first appointment with the gatekeeper takes between one and two hours. If the gatekeeper determines an individual has some type of psychiatric problem, the person is referred to the appropriate department. Appellant was originally assessed at "Level 4, intensive out-patient," but she did not know if he received a psychiatric referral.

Ms. Woolfolk testified she met with appellant and other probationers on March 18, 2002, and advised them about the conditions of their probation. She met with about 12 people that day, and spoke with appellant and three or four other people as one group. She conducted a group orientation, then spoke briefly with each individual about his or her particular appointments. Appellant signed a written notice of the terms of probation, and he received a copy of the document. Ms. Woolfolk always tried to make sure each probationer understood that he or she had to return for the appointment with the "gatekeeper."

Ms. Woolfolk testified appellant received a written form directing him to report to the mental health gatekeeper. Ms. Woolfolk testified appellant did not ask to meet with the gatekeeper that day. Instead, appellant said he had other appointments to take care of, and he asked to delay the appointment until March 27. If appellant asked to see the gatekeeper that day, Ms. Woolfolk would have arranged for the appointment.

Ms. Woolfolk testified that appellant failed to appear for the appointment. On March 28, she sent appellant a letter telling him to appear at the probation department for an appointment with the mental health gatekeeper on April 3, 2002, that he had to call if he needed to reschedule, and that a bench warrant would be issued if he failed to report. Appellant did not appear and she did not take additional steps to contact him. She did not have any more contact with him.

Dr. Carol Hendrix, a psychologist, testified that she examined appellant at the jail in August 2002, to determine whether he was competent to stand trial

pursuant to section 1368. Dr. Hendrix determined appellant had a history of bipolar disorder, antisocial personality disorder, and substance abuse. He was also paranoid in his belief system and had some delusions. Appellant's impulsiveness and antisocial behavior "gets him in trouble" and creates problems for him. However, Dr. Hendrix determined he had a normal-range intelligence, understood the judicial process, and was competent to stand trial.

Dr. Hendrix was concerned that appellant had a "dual diagnosis" for both mental health and substance abuse problems, but he had not been appropriately targeted by the Kern County Mental Health Department. Appellant would benefit from the appropriate medication to treat bipolar disorder but he would have to be willing to take it, he must be held accountable for his behavior, and "he must do his part."

Dr. Hendrix testified there would be more suitable programs for appellant if Kern Mental Health appropriately targeted him as a dual diagnosis. She wasn't familiar with the Proposition 36 programs, but testified appellant needed to be held accountable, and a locked facility might be appropriate if he could not abide by the rules.

Appellant testified at the probation violation hearing about his meeting with Ms. Woolfolk in March 2002. He reported to the probation department immediately after he was released from jail. Ms. Woolfolk spoke with appellant and four or five other people, and advised them of the conditions of their probation. Ms. Woolfolk told appellant he had to meet with the mental health gatekeeper. Appellant told Ms. Woolfolk that he wanted an appointment with Kern County Mental Health as soon as possible because he was concerned about relapsing and wanted to get into a program. Appellant admitted he didn't appear for his appointment with the "gatekeeper." In July 2002, he called the probation department to set up an appointment and was told to come in to the office. Appellant had looked into several programs and received an acceptance letter from one program, and he wanted to find out if it was appropriate for his probation. Appellant testified he went to the probation department to follow up on his telephone call but he was arrested on the bench warrant.

Defense counsel conceded appellant failed to appear for his appointment with the mental health gatekeeper, but asserted appellant violated a drug-related condition of probation, within the meaning of section 1210.1, subdivisions (e)(3) and (f), and the provisions of Proposition 36 would still control the disposition of the probation violation. Counsel cited Dr. Hendrix's testimony and argued that when appellant initially met with the mental health gatekeeper in 2001, his mental illness was not considered and he was not properly assessed.

The court replied that Dr. Hendrix's testimony raised dispositional issues and was not relevant to appellant's failure to appear for the scheduled appointment. The court noted that Dr. Hendrix testified appellant had to be held responsible for his behavior, regardless of his mental condition. The court found appellant violated probation, and referred the matter for an updated probation report.

*The Sentencing Hearing*

On December 6, 2002, the court conducted the sentencing hearing. Counsel argued appellant's failure to meet with the mental health gatekeeper was a drug-related violation of probation within the meaning of Proposition 36, and he should remain within the provisions of that statute. Appellant was in custody at Lerdo and had finally received medication for his bipolar condition, and his mental condition had improved. The prosecutor asserted that appellant's failure to comply with a legitimate directive of the probation department was not a drug-related violation of probation.

The court noted that appellant had reported to the probation department as ordered, and the sole basis for the probation violation was appellant's failure to appear for the scheduled appointment with the mental health gatekeeper. The court acknowledged that section 1210.1, subdivision (f) expanded the definition of drug-related conditions but did not believe appellant's "initial interview with Mental Health can be characterized as one of those things. I think that it is a non-drug-related violation, and as a result, I am going to exclude [appellant] from Prop[osition] 36 at this time."

The court was concerned whether the probation department was aware of Dr. Hendrix's diagnosis of appellant's significant mental health issues, and wanted appellant to be placed in an appropriate program for both his drug and mental health problems. The probation officer replied he was not in a position to recommend a specific program at that time.

The court directed defense counsel to contact the probation department, find out what programs were available for appellant's problems, and get appellant into the appropriate program. Counsel replied he already tried that and the probation department refused to give him a list of the available programs. The court directed the probation officer to assist defense counsel, and for appellant to follow through and apply for the appropriate program.

Defense counsel noted the probation report recommended appellant receive nine months in jail, and he already had approximately 223 days of credits. The court believed appellant's credits were a few days short of nine months, and "we do him a disservice if we just let him out of jail as opposed to

getting him directly into a program. And that's all [I'm] concerned with is that he go directly into a program. I think if we don't, we're going to be back here, okay, and then the options narrow."

The court took a recess for defense counsel to consult with the probation officer. After the recess, defense counsel advised the court it was difficult to place appellant in an appropriate program because he had been excluded from Proposition 36.

The court excluded appellant from Proposition 36 but reinstated him on probation. Appellant was ordered to serve nine months in jail, to be followed by a custodial treatment program approved by the probation department.

"[THE COURT:] While in the program, sir, you're entitled to custody credits. Are you willing to waive those custody credits?

"[APPELLANT]: Can I—I'm just curious. Can I get the custody credits while in the program?

"THE COURT: You have the right to request them. If you do, I don't know that the Court would be inclined to impose the sentence that I've indicated that I will impose."

The court asked defense counsel if she discussed this with appellant. Counsel replied they talked about the waiver of custody credits at "some length" and would explain it again.

After a brief discussion, appellant said he would waive the custody credits for a custodial treatment program. The court imposed additional jail time, which would then exceed "the one year in local County jail as a condition of felony probation." Appellant waived the one-year limit and the court reinstated his probation. The court reinstated all other terms and conditions of probation, and noted he had 149 actual and 74 work credits for a total of 223 days.

The court thus reinstated and modified probation, ordered appellant to serve nine months in jail, and to attend a custodial treatment program approved by the probation department. All previously ordered terms and conditions remained in effect.

On December 6, 2002, appellant filed a timely notice of appeal. Appellant contends the trial court improperly excluded him from Proposition 36 because his failure to meet with the mental health gatekeeper was a "drug-related condition of probation" within the meaning of the statute. Appellant also

contends the court improperly ordered him to serve local time after his first probation violation, and improperly required him to waive his custody credits after his second violation.

## DISCUSSION

## I.

## PROPOSITION 36 AND DRUG-RELATED CONDITIONS OF PROBATION

Appellant contends the court improperly excluded him from Proposition 36 as a result of his second probation violation. Appellant concedes he failed to meet with the mental health "gatekeeper," but asserts this was a drug-related condition of probation within the meaning of section 1210.1 and he was still eligible to receive the benefit of the probation and treatment provisions of Proposition 36.

A. *Proposition 36*

We begin with the general background of Proposition 36. In *People v. Floyd* (2003) 31 Cal.4th 179 [1 Cal.Rptr.3d 885, 72 P.3d 820], the California Supreme Court explained that Proposition 36, the Substance Abuse and Crime Prevention Act (the Act), was passed by California voters on November 7, 2000, and "amended state law to require that certain adult drug offenders receive probation, conditioned on participation in and completion of an appropriate drug treatment program, instead of receiving a prison term or probation without drug treatment." (*Id.* at p. 183, citing § 1210.1.) The Act took effect on July 1, 2001, and is codified in Penal Code sections 1210, 1210.1 and 3063.1, and in division 10.8 (commencing with 11999.4) of the Health and Safety Code. (*People v. Murillo* (2002) 102 Cal.App.4th 1414, 1417 [126 Cal.Rptr.2d 358]; *In re Scoggins* (2001) 94 Cal.App.4th 650, 652 [114 Cal.Rptr.2d 508].)

"The manifest purpose behind Proposition 36 was to divert into treatment those persons whose *only* offenses were nonviolent drug possession offenses. Proposition 36 explained its intent, among other things, to (1) 'divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses'; and (2) 'enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies.' " (*People v. Goldberg* (2003) 105 Cal.App.4th 1202, 1208 [130 Cal.Rptr.2d

192]; *People v. Johnson* (2003) 114 Cal.App.4th 284, 293–294 [7 Cal.Rptr.3d 492].)

■ Thus, a defendant convicted of a nonviolent drug possession offense is generally placed on probation, instead of being sentenced to state prison or county jail, on condition of completing a drug treatment program. (*In re DeLong* (2001) 93 Cal.App.4th 562, 566 [113 Cal.Rptr.2d 385]; § 1210.1, subd. (a).) The court may not impose incarceration as a condition of probation. Instead, the court may require, as additional conditions of probation, defendant's "participation in vocational training, family counseling, literacy training and/or community service." (§ 1210.1, subd. (a); *People v. Guzman* (2003) 109 Cal.App.4th 341, 347 [134 Cal.Rptr.2d 727].) If the defendant successfully completes drug treatment and probation, the conviction is set aside, the information or indictment is dismissed, and for most purposes, the arrest is deemed not to have occurred. (§ 1210.1, subd. (d); *In re Scoggins, supra,* 94 Cal.App.4th at p. 656.)

■ A defendant who is on probation pursuant to Proposition 36 can only have that probation revoked in accordance with the terms of the statutory scheme. (*In re Mehdizadeh* (2003) 105 Cal.App.4th 995, 1006 [130 Cal.Rptr.2d 98]; *People v. Guzman, supra,* 109 Cal.App.4th at p. 347.) For such a defendant, Proposition 36 supersedes the trial court's general power to revoke probation under sections 1203.2 and 1203.3. (*People v. Davis* (2003) 104 Cal.App.4th 1443, 1447–1448 [129 Cal.Rptr.2d 48]; *People v. Esparza* (2003) 107 Cal.App.4th 691, 697 [132 Cal.Rptr.2d 377]; *People v. Murillo, supra,* 102 Cal.App.4th at pp. 1418–1421.) "Different rules apply depending on whether a defendant violates a non-drug-related or drug-related condition of probation." (*People v. Guzman, supra,* at p. 348.) "Anticipating that drug abusers often initially falter in their recovery, Proposition 36 gives offenders several chances at probation before permitting a court to impose jail time. The first time an offender violates a *drug-related* condition of probation, he is entitled to be returned to probation unless he poses a danger to others. (§ 1210.1, subd. (e)(3)(D).) The second time he violates a drug-related condition of probation, he is entitled to be returned to probation unless he poses a danger to others or is unamenable to treatment. (§ 1210.1, subd. (e)(3)(E).) Only upon a third violation of a drug-related condition of probation does an offender lose the benefit of Proposition 36's directive for treatment instead of incarceration. (§ 1210.1, subd. (e)(3)(F).) Upon such a violation, the court regains its discretion to impose jail or prison time. (*People v. Davis, supra,* 104 Cal.App.4th at p. 1448.) Proposition 36 does not, however, extend the same grace to probationers who violate

*non-drug-related* conditions of probation. The first time a probationer violates such a condition, the court has discretion to incarcerate the person. (§ 1210.1, subd. (e)(2).)" (*In re Taylor* (2003) 105 Cal.App.4th 1394, 1397–1398 [130 Cal.Rptr.2d 554], fns. omitted.)

■ The prosecution has the burdens of producing evidence and of persuasion that defendant's violation "did not involve a drug-related condition of probation." (*People v. Atwood* (2003) 110 Cal.App.4th 805, 812–813 [2 Cal.Rptr.3d 67].) Section 1210.1, subdivision (f) states: "The term 'drug-related condition of probation' shall include a probationer's specific drug treatment regimen, employment, vocational training, educational programs, psychological counseling, and family counseling."

■ Thus, a defendant may be excluded from the provisions of Proposition 36, and face incarceration as a condition of probation, if his or her probation violation was not drug related. (*People v. Atwood, supra,* 110 Cal.App.4th at p. 810.) "[A] defendant who has violated a non-drug-related condition of probation loses the 'grace' granted to probationers otherwise subject to Proposition 36. [Citation.] At that point, the defendant stands in the same shoes as any other probationer and he is subject to whatever sentencing statutes bear on his sentencing." (*People v. Dixon* (2003) 113 Cal.App.4th 146, 153 [5 Cal.Rptr.3d 917].) The court then has the full range of options otherwise available in a probation revocation proceeding, including imposing a term of incarceration as a new condition of probation or lifting the stay on a previously imposed term of incarceration. (*People v. Davis, supra,* 104 Cal.App.4th at p. 1448.)

In the instant case, appellant committed his second violation of probation by failing to meet with the mental health gatekeeper. The court excluded him from the provisions of Proposition 36, but reinstated him on probation on condition of serving local time. If this had been the second violation of a drug-related condition of probation, the trial court could not have excluded him from Proposition 36 unless the court found he posed a danger to others or was unamenable to treatment. (§ 1210.1, subd. (e)(3)(E).) The court did not make such findings. Instead, it found his failure to appear was not a drug-related condition of probation and excluded him from the provisions of Proposition 36. (§ 1210.1, subd. (e)(2).) Appellant contends this finding was erroneous because his failure to meet with the gatekeeper was a "drug-related condition of probation."

## B. *"Drug-related" Conditions of Probation*

We next turn to a series of cases which examine the meaning of the phrase a "drug-related condition of probation" pursuant to section 1210.1, subdivision (f), in situations where a defendant, who was placed on probation subject to Proposition 36, was subsequently excluded from Proposition 36 because of a probation violation.

In *People v. Davis, supra*, 104 Cal.App.4th 1443, the defendant tested positive for controlled substances and was absent without excuse from drug court. The trial court found the positive tests were a drug-related condition of probation, but his failure to attend drug court was not drug related and excluded him from further Proposition 36 probation. (*Id.* at pp. 1445–1446.) On appeal, the People argued the defendant's failure to appear in drug court was "merely a violation of a court order and not part of a drug-related condition of his probation." (*Id.* at p. 1446.) *Davis* rejected this argument and held the defendant violated a drug-related condition: "We conclude it is beyond question that defendant's acceptance into and ordered participation in the court's substance abuse program of drug testing and reporting to drug court was part of defendant's drug treatment regimen, and a drug-related condition of his probation." (*People v. Davis, supra*, at p. 1447.) *Davis* thus concluded the defendant was improperly excluded from Proposition 36.

In *People v. Goldberg, supra*, 105 Cal.App.4th 1202, the court remarked in dictum that a general condition which required the defendant to report to his probation officer was not a drug-related condition of probation. (*Id.* at p. 1209.)

In *In re Taylor, supra*, 105 Cal.App.4th 1394, the trial court found the defendant's failure to report to his probation officer for a drug test did not involve a drug-related condition of probation. The court excluded him from Proposition 36 and ordered him to serve time as a condition of probation. *Taylor* held section 1210.1, subdivision (f) "broadly defines drug-related conditions of probation," which included a "drug treatment regimen." (*Taylor*, at p. 1398.) "It involves no linguistic or logical stretch to deem a probationer's obligation to take drug tests a part of his treatment regimen, because tests permit authorities to monitor a probationer's compliance with the program by ensuring he is abstaining from illegal drugs. (Accord, § 1210.5 [equates 'drug testing' with 'treatment'].) Because one cannot be tested unless one shows up for the test, it follows that a drug treatment regimen includes appearing for

tests. Appearing (or failing to appear) for a drug test thus satisfies the definition of a drug-related condition of probation. (See § 1210.1, subd. (f).)" (*In re Taylor, supra,* 105 Cal.App.4th at p. 1398.) *Taylor* acknowledged that someone may report to a probation officer "for any number of reasons, none of which is necessarily drug-related," but the defendant's "primary, and perhaps only, reason for reporting was for testing; as he stipulated in admitting his probation violation, he failed 'to appear *for testing.*' " (*Id.* at pp. 1398–1399, italics in original.) "We reiterate our agreement with the People that even for those defendants who have been convicted of drug-related offenses, not every appointment with a probation officer is drug-related. Probation officers may require defendants on probation for drug-related offenses to meet with them for non-drug-related purposes. For example, such appointments might be related to a probationer's obligation to maintain a residence or employment approved by the probation officer, participate in other types of counseling programs, and satisfactorily comply with probation generally. We hold here only that when the probation violation is the failure to appear for an appointment to be tested, then the appointment is a drug-related condition." (*In re Taylor, supra,* 105 Cal.App.4th at p. 1399, fn. 7.) *Taylor* thus concluded the nature of the defendant's appointment with the probation officer made the violation one of a drug-related condition of probation.

In *People v. Atwood, supra,* 110 Cal.App.4th 805, the defendant violated probation in two ways: she failed to attend outpatient counseling and enter treatment, and she failed to keep a scheduled appointment with her probation officer. The trial court found the defendant was not eligible for further treatment under Proposition 36, revoked probation, and sentenced her to prison. (*Atwood,* at pp. 807–808.) *Atwood* found the defendant's failure to attend drug-treatment counseling was clearly drug related. As for the second allegation, *Atwood* relied on *Taylor* and noted that the defendant's failure to keep the appointment with her probation officer could have been drug related, but the record failed to disclose the purpose for the appointment. (*Id.* at pp. 810–811.) *Atwood* held the prosecution had the burdens of producing evidence and persuasion that the violation was not drug related in order to send the defendant to prison. (*Id.* at pp. 811–813.) *Atwood* noted the defendant could have been ordered to appear in person to her probation officer for a drug test, and remanded the case to the trial court to allow the prosecution the opportunity to present evidence on whether the violation was not drug related. (*Id.* at pp. 812–813.)

In *People v. Dixon, supra*, 113 Cal.App.4th 146, the defendant failed to report to the probation officer monthly by mail. The trial court found the defendant violated a general condition of probation and the violation was not drug related. The trial court excluded the defendant from Proposition 36, revoked probation, and imposed a prison term. (*Dixon,* at pp. 149–150.) *Dixon* reviewed *Taylor, Atwood,* and *Davis,* and held the defendant's violation was not drug related: "[W]e do not have to decide whether a general condition of probation, requiring a defendant to report personally to his probation officer, may qualify as a non-drug-related condition. Defendant was ordered to report by mail. This method of reporting could not have involved a drug test nor was there anything else about reporting by mail that was peculiar to defendant's drug problems or drug treatment." (*People v. Dixon, supra,* 113 Cal.App.4th at p. 152.) *Dixon* concluded the defendant's failure to report by mail was not a drug-related condition of probation and he was properly excluded from Proposition 36. (*People v. Dixon, supra,* 113 Cal.App.4th at p. 152.)

In *People v. Johnson, supra,* 114 Cal.App.4th 284, the defendant pleaded guilty to simple possession and had a prior strike conviction. She was placed on Proposition 36 probation pursuant to numerous conditions, "some of which were drug related and some of which were non-drug related." (*Johnson,* at p. 297.) The minutes listed certain conditions under the heading " 'ALCOHOL/DRUGS,' " including that the defendant was required to participate in a drug treatment program, follow all rules of the drug treatment program, and submit to a drug test when it was requested by law enforcement. (*Ibid.*) The minutes also listed conditions under the "non-drug-related headings" such as " 'EDUCATION/EMPLOYMENT,' 'DRIVERS LICENSE,' 'MISC.' and 'REFERRALS,' " which included that the defendant was required to seek and maintain full-time employment participate in schooling, vocational training, family counseling or a combination thereof; obey all laws; report any change of address or employment to the probation officer; and " '[r]eport forthwith . . . to [the] Probation [Department].' " (*Id.* at p. 298, italics omitted.) The defendant admitted she failed to report to the probation department, and the trial court found this was a violation of a "non-drug-related" condition of probation. (*Id.* at pp. 298–299.)

*Johnson* held the defendant's failure to report to her probation officer was not a drug-related condition of probation. *Johnson* rejected the defendant's reliance on *Taylor* and noted not every appointment with a probation officer is drug related, and there was no evidence the defendant's appointment was for a drug test or other drug-related reason. (*People v. Johnson, supra,* 114 Cal.App.4th at pp. 299–300.) "In light of her prior conviction of a violent

felony, it was important that Johnson report to the probation officer for reasons other than assessing whether she was complying with the drug-related conditions of her probation." (*Id.* at p. 299.) *Johnson* concluded the defendant repeatedly violated the non-drug-related condition of reporting to her probation officer and she was properly excluded from Proposition 36: "Such a result is consistent with the intent and purpose of Proposition 36." (*Ibid.*)

## C. *Analysis*

In the instant case, the issue is whether appellant's failure to meet with the Kern County Mental Health "gatekeeper" for his initial evaluation in March 2002, was a violation of a drug-related condition of probation within the meaning of Proposition 36 and section 1210.1, subdivision (f). The preliminary question, however is to review the record and determine what role the "gatekeeper" plays in the instant probationary scheme relative to Proposition 36.

When appellant pleaded no contest and was placed on probation on August 31, 2001, the court ordered him to report "forthwith" to the Probation Department Mental Health team, report monthly thereafter to the probation department as to his current address and employment, and complete "an appropriate drug treatment program, job training program, adult literacy classes, or any other appropriate Prop. 36 program which is approved by the Probation Department." Appellant was given a written statement of the requirements pursuant to Proposition 36, which stated he would be placed on probation, on condition of participating and completing an appropriate drug treatment program "as determined by the Kern County Probation and Mental Health Departments." Appellant would be referred "for an evaluation by the Kern County Probation and Mental Health Departments. Based on this evaluation, you will be placed in an appropriate licensed or certified community program, which may include one or more of the following: outpatient treatment, half-way house treatment, narcotic replacement therapy, drug education or prevention courses and/or limited inpatient or residential drug treatment as needed to address special detoxification or relapse situations or severe dependence."

At the probation violation hearing, the probation officers testified about appellant's failure to appear but also described the function of the mental health "gatekeeper." Ms. Young, a deputy probation officer, testified she reviewed appellant's records and determined he was initially interviewed by the mental health "gatekeeper" when he was placed on probation in 2001, and the "gatekeeper" referred appellant to the appropriate drug treatment program. Ms. Woolfolk, appellant's probation officer, testified the "gatekeeper" initially evaluated appellant as "Level 4, intensive out-patient."

Ms. Woolfolk testified appellant appeared at the probation department on March 18, 2002, after he served local time for his first probation violation. He was instructed to return on March 27, 2002, for the evaluation by the gatekeeper. Ms. Woolfolk testified a probationer's first evaluation by the gatekeeper usually lasted between one to two hours. If the gatekeeper determined the probationer also had some type of psychiatric problem, the gatekeeper would refer that person to the appropriate program.

The entirety of the record strongly indicates that appellant's failure to meet with the mental health "gatekeeper" was a violation of a drug-related condition of probation within the meaning and intent of Proposition 36. Section 1210.1, subdivision (f) defines a " 'drug-related condition of probation' " as including "a probationer's specific drug treatment regimen, employment, vocational training, educational programs, psychological counseling, and family counseling." The record indicates that appellant would not be placed in the appropriate Proposition 36 program until he met with the "gatekeeper," who would evaluate his circumstances and determine the requisite treatment level. As explained in *People v. Davis, supra*, 104 Cal.App.4th at page 1447: "We conclude it is beyond question that defendant's acceptance into and ordered participation in the court's substance abuse program of drug testing and reporting to drug court was part of defendant's drug treatment regimen, and a drug-related condition of his probation."

■ Appellant could not be placed in the appropriate drug treatment program until he was evaluated by the mental health "gatekeeper." Since a person cannot be placed in the appropriate drug treatment program without being evaluated, it follows that a drug treatment regimen includes the initial evaluation, and appearing or failing to appear for that evaluation "thus satisfies the definition of a drug-related condition of probation." (*In re Taylor, supra*, 105 Cal.App.4th at p. 1398.) In contrast to *Dixon, Goldberg*, and *Johnson*, appellant was not required to report to the "gatekeeper" as a general condition of probation, or to report his whereabouts or employment status. Appellant's initial evaluation was the crucial first step to place him in the appropriate treatment program pursuant to the provisions of Proposition 36.

We thus conclude that appellant's failure to report to the "gatekeeper" for his initial evaluation was a violation of a drug-related condition of probation. This marked appellant's second probation violation, and he was entitled to be reinstated on probation pursuant to Proposition 36 unless the trial court found that he posed a danger to others or was unamenable to treatment. (§ 1210.1, subd. (e)(3)(E).) The trial court did not make such findings, and only relied on appellant's violation of a non-drug-related condition to exclude him from Proposition 36.

Respondent asserts that even if this court concludes appellant's violation was based on a drug-related condition of probation, the trial court's decision to exclude appellant from Proposition 36 was still proper because his conduct rendered him unamenable to treatment. Respondent's argument is based on *Taylor, Guzman,* and *Johnson.* As discussed *ante, In re Taylor, supra,* 105 Cal.App.4th 1394 held the defendant's failure to report to his probation officer for a drug test was a drug-related condition of probation, and he was improperly excluded from Proposition 36. The People argued that even though the probation violation was drug related, the trial court's decision to exclude the defendant from the provisions of Proposition 36 was still correct because the trial court "implicitly found [the defendant] was unamenable to further treatment, a circumstance under which Proposition 36 does not apply." (*Id.* at p. 1399.)

*Taylor* rejected the People's argument and held the trial court's decisions at the probation revocation hearing belied such a finding. While the trial court improperly found the defendant's violation was not drug related and excluded the defendant from further treatment pursuant to Proposition 36, it still reinstated him on probation subject to serving local time and participating in a drug-treatment program. "It makes no sense for the court to order continued treatment if the court believed [the defendant] was unamenable." (*In re Taylor, supra,* 105 Cal.App.4th at p. 1399.)

■ *People v. Guzman, supra,* 109 Cal.App.4th 341 reached the opposite conclusion on a far different record. The trial court placed the defendant on probation pursuant to Proposition 36, but subsequently found the defendant's failure to report to the drug treatment program for assessment was "a refusal to accept drug treatment" within the meaning of section 1210.1, subdivision (b)(4). (*Guzman,* at p. 349.) *Guzman* held a trial court "can terminate the probation of a defendant who, by his conduct following the grant of probation refuses to undergo drug treatment." (*Id.* at p. 350.) *Guzman* found that the defendant's conduct indicated he refused drug treatment because he made "no effort whatsoever to comply with his drug treatment probation," he absconded and fled the country, he failed to report voluntarily when he returned, and he persisted in disregarding the conditions of probation. (*Id.* at pp. 349–350.) "Hence, this is not a case in which a defendant commences drug treatment and falters." (*Id.* at p. 350.) Instead, the defendant "evinced a complete and unequivocal refusal to undergo drug treatment." (*Ibid.*) *Guzman* thus concluded the trial court properly excluded the defendant from Proposition 36 because his conduct demonstrated his refusal to comply with the requirements of Proposition 36.

In *People v. Johnson, supra,* 114 Cal.App.4th 284, the defendant pleaded guilty to simple possession and had a prior strike conviction for a violent felony. She was placed on probation pursuant to Proposition 36, but repeatedly violated the non-drug-related condition of reporting to her probation

officer. She also failed to enroll in a drug treatment program and failed to appear at review hearings. (*Johnson,* at pp. 297–298.) As noted *ante, Johnson* held the defendant's failure to report was not a drug-related condition of probation. (*Id.* at pp. 299–300.) *Johnson* also relied on *Guzman* and held the defendant's conduct "demonstrated a 'complete and unequivocal refusal to undergo drug treatment,' thereby rendering herself ineligible for further probation under Proposition 36." (*Id.* at p. 300.)

Respondent asserts the instant case is similar to *Guzman* and *Johnson,* and appellant grossly abused the Proposition 36 probationary scheme and impliedly refused drug treatment based on his conduct which resulted in the second probation violation. Respondent notes appellant failed to appear for his meeting with the mental health gatekeeper on March 27, 2002, failed to respond to the probation officer's letter in April 2002, and did not contact the probation department until July 2002. He finally appeared at the probation department on July 11, 2002, and was arrested on the bench warrant. Respondent asserts appellant was thwarting the Proposition 36 scheme and, as in *Guzman* and *Johnson,* the trial court properly excluded him from Proposition 36.

■ Respondent's argument is refuted by the trial court's findings at the probation violation hearing. The court erroneously found appellant violated a non-drug-related condition of probation and excluded him from Proposition 36. While the probation officer believed appellant was unamenable to treatment, the trial court rejected that opinion and immediately reinstated appellant on probation subject to serving local time and participating in an in-custody drug treatment program. "It makes no sense for the court to order continued treatment if the court believed [the defendant] was unamenable." (*In re Taylor, supra,* 105 Cal.App.4th at p. 1399.) As in *Taylor,* the trial court's decision to reinstate appellant on probation with drug treatment reflects its obvious disagreement with the probation officer's opinion, and belies respondent's claim that appellant's conduct rendered him unamenable to treatment or demonstrated his refusal to comply with drug treatment.

■ Finally, respondent contends the trial court retained its traditional discretion pursuant to sections 1203.2 and 1203.3 to revoke appellant's probation, even though he was within the provisions of Proposition 36, for violating any condition of probation, whether or not that violation was drug related. As discussed *ante,* however, a defendant who is on probation pursuant to Proposition 36 can only have that probation revoked in accordance with the terms of the statutory scheme. (*In re Mehdizadeh, supra,* 105 Cal.App.4th at p. 1006; *People v. Guzman, supra,* 109 Cal.App.4th at p. 347.) For such a defendant, Proposition 36 supersedes the trial court's general power to revoke probation under sections 1203.2 and 1203.3. (*People v. Davis, supra,* 104

Cal.App.4th at pp. 1447–1448; *People v. Esparza, supra,* 107 Cal.App.4th at p. 697; *People v. Murillo, supra,* 102 Cal.App.4th at pp. 1418–1421; *In re Taylor, supra,* 105 Cal.App.4th at p. 1399.) Section 1210.1, subdivision (e) expressly limited the trial court's ability to revoke probation for a defendant who had been placed within the provisions of Proposition 36.

We thus conclude the trial court herein improperly found appellant's failure to appear for the first evaluation with the mental health "gatekeeper" was not a drug-related condition of probation. Appellant should not have been excluded from the provisions of Proposition 36 and is entitled to be reinstated on Proposition 36 probation.

## II.

## ADDITIONAL CONDITIONS OF PROBATION

Appellant raises two separate issues regarding the trial court's orders after his first and second probation violations. He contends the trial court improperly ordered him to serve local time and waive his custody credits as conditions of probation.

### A. *The First Probation Violation*

As set forth *ante,* appellant admitted his first probation violation in February 2002, but the court reinstated him on Proposition 36 probation on condition of serving 60 days in jail. Appellant did not appeal this ruling. Instead, he served his time and was thereafter released on probation. Appellant now asserts the court improperly ordered jail time in February 2002, as a condition of reinstating him on Proposition 36 probation after his first violation.

A similar argument was raised in *People v. Dixon, supra,* 113 Cal.App.4th 146, in which the defendant was placed on probation pursuant to Proposition 36. In May 2002, the court found the defendant committed his first probation violation but reinstated the defendant on probation pursuant to Proposition 36, on condition of serving 60 days in jail. The defendant did not file a notice of appeal from the court's order. He served his time and was released on probation. In November 2002, the trial court found the defendant committed his second probation violation but the violation was not drug related. The court excluded him from Proposition 36, revoked probation, and sentenced him to prison. The defendant filed an appeal from the November 2002, judgment and argued the second violation was drug related. The defendant also argued the court erroneously imposed local time as a condition of probation in May 2002, after the first violation. (*Dixon,* at pp. 150–151.)

■ *Dixon* acknowledged that a defendant on probation pursuant to Proposition 36 cannot be required to serve time as a condition of probation. (*People v. Dixon, supra*, 113 Cal.App.4th at p. 150; § 1210.1, subd. (a).) However, *Dixon* held the defendant's challenge to the local time imposed for the first probation violation was "not cognizable" because he did not file a timely notice of appeal within 60 days of sentencing in May 2002. Instead, the defendant appealed from the November 2002, judgment which imposed the prison term for the second probation violation. "Because he failed to file a timely notice of appeal, he cannot challenge the condition in this appeal." (*People v. Dixon, supra*, at p. 150, citing *People v. Mendez* (1999) 19 Cal.4th 1084, 1094 [81 Cal.Rptr.2d 301, 969 P.2d 146].)

■ As in *Dixon*, appellant's challenge to the local time imposed as a probation condition after his first violation is not cognizable in this appeal. In February 2002, appellant admitted the first probation violation and the court reinstated him on Proposition 36 probation, on condition of serving 60 days in jail. Such a condition was improper pursuant to section 1210.1, subdivision (a) of Proposition 36. However, appellant did not file a timely notice of appeal within 60 days of the court's sentencing order. Instead, the instant appeal was taken from the court's judgment in December 2002, when it excluded appellant from Proposition 36 for his second probation violation. Appellant is thus foreclosed from raising this issue in the instant appeal.

B. *The Second Probation Violation*

Appellant next contends that the trial court improperly imposed local time and waiver of custody credits as conditions of probation after his second probation violation.

As set forth *ante*, the court found appellant's second probation violation was not drug related, excluded him from Proposition 36 probation, but reinstated him on probation pursuant to section 1203.1, on condition of serving local time and waiving his custody credits. If appellant had been correctly reinstated on probation pursuant to Proposition 36, the court's order for service of local time would have been an improper condition of such probation, and would have been cognizable in this appeal. (§ 1210.1, subd. (a).) Once the court excluded appellant from Proposition 36, however, it had the full range of options otherwise available in a probation revocation proceeding, including imposing a term of incarceration or requiring the waiver of custody credits as new conditions of probation. (*People v. Davis, supra*, 104 Cal.App.4th at p. 1448; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120–1122 [43 Cal.Rptr.2d 681, 899 P.2d 67].)

These issues are moot, however, because we have already concluded the court improperly found appellant's second probation violation was not a

drug-related condition and excluded him from Proposition 36. On remand, the trial court must reinstate appellant on probation pursuant to Proposition 36, and it cannot impose local time as a condition of probation. (§ 1210.1, subd. (a).)

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further appropriate proceedings in accordance with the views expressed herein.

Dibiaso, Acting P. J., and Levy, J., concurred.